Your Honors, the District Court's ruling that every limited admission under Act 312 must result in remediation is contrary to the plain language of that Act. I'm going to show that, but first I want to address appellate jurisdiction. There are two grounds for appellate jurisdiction in this case. The first is that the District Court's ruling is equivalent to an injunction. I have to show that it has the practical effect of an injunction. I think that it does because the District Court specifically commanded that the Louisiana Department of Natural Resources, LDNR, shall submit to the court a feasible plan to remediate contamination. This is much like other cases that have come before the court. For example, United States v. Texas. Similarly in that case, the District Court ordered, in that case it was the Texas Department of Education, ordered that department to adopt a plan, a monitoring plan. What this court held was that that was sufficiently coercive to have the practical effect of an injunction. I have a couple questions about that. First of all, I take it that in several of these cases that were coercive on the state, it was a state entity or a school district entity that was appealing, right? Yes, Judge. LNRD isn't a party. They haven't intervened or anything. That's correct, Your Honor. I think what Your Honor is getting to is that I'm here representing Chevron, but this is also sufficiently coercive as to Chevron. Why? Because Chevron is the party that must perform the remediation. Oh, there's no question it's coercive as to Chevron. The other question is, why didn't ... I don't know whether anybody foresaw this appellate issue at the outset, but why didn't you seek a 1292B since this act has been rarely construed? I don't know your answer why that wasn't requested, but I will say that I would doubt that it would have been granted because, in fact, the district court during the hearing on this motion recognized that the argument that was being made was novel, that was the district court's word. In fact, the district court asked Henning's counsel if anyone had ever made this argument before, and Henning's counsel forthrightly answered no. This was an unprecedented argument, and the judge in response at some point in the hearing said, well, if I accept your argument, then I'm going to then be inclined to allow Chevron to withdraw its limited admission. But in fact, when we came behind and asked the court to allow us to withdraw the limited admission, the district court refused that. So I think that suggests that we would have had no more success asking for . . . Had there been any change in the factual development of the case between those two events? None whatsoever, Your Honor. That's the impression I got. Okay. I don't understand that point that you made, sir. The fact that the district court ultimately ruled against an argument on the merits means that they went on to certify the question for . . . I don't . . . Joe, Joe, I can't say that for sure, but I think . . . I mean, the Supreme Court grants cert whether they agree or disagree with the judgment below. It's two separate questions. They are two separate questions, but I think that the court's denial of the motion to withdraw, which the court had invited at the hearing, suggests that the district court was intent on going forward with its ruling that a limited admission must always result in remediation. It seemed to me . . . it seems to me like the court was . . . But obviously, that doesn't excuse counsel . . . it doesn't excuse Chevron from failing to seek . . . here's the problem, is ultimately, you know, obviously, rightly or wrongly, Congress has set up the system where you need the district court's approval to do certifications . . . Correct. . . . to certify an interlocutory appeal, and . . . well, I'll just leave it at that. Well, and we are where we are, of course, and I do think that . . . and I understand that this court jealously protects its appellate jurisdiction. I do think, though, that this case fits within that test of there being a practical effect of an injunction. I mean, the fact that you . . . the fact that you can't find anything that has ordered a state agency to do something between the school segregation cases and today suggests that this is an extraordinary remedy. Your Honor, I agree, and . . . If you can't, I mean, I haven't done all the research, but . . . And I think it's also important to note that LDNR understood what the district court had commanded to be coercive, and we can see that because before the hearing, LDNR actually moved to continue the hearing, and it argued that . . . because at that point, LDNR knew that this appeal had been lodged, and what LDNR said to the district court was this appeal could make the hearing, quote, meaningless, recognizing that it was being compelled by the district court to rule a certain way. And then after the hearing, the LDNR actually handed down its feasible plan. I'm not sure I understand that. If the LDNR said that this appeal could render it meaningless, why does that . . . I mean, that's true on your merits issue about the withdrawal of the statement, but . . . I think . . . Why does that suggest anything about the nature of the order against . . . What I understood the point LDNR to be making was that because the district court had preempted its consideration of the evidence and had commanded LDNR to adopt remediation, that much of the hearing was going to be moot, that it was . . . But that would be true if the hearing was entirely voluntary on behalf of the State, right? Yes, except for I think it's different because the district court had mooted any action that LDNR would take, and we can see that by the feasible plan that LDNR actually issued, and we've submitted that with the Rule 28J letter. It's a 32-page feasible plan, and in that feasible plan, LDNR reviews the scientific evidence at some length. There's a tremendous amount of technical evidence, and on most issues, it sees the scientific evidence the way Chevron did, but then when it gets to what it has to actually rule, it says, as to the soil, it says, in consideration of the district court's order, we order remediation. When it gets to the groundwater, it doesn't even make a determination. It doesn't even give a recommendation, but because it can't discern what the district court means to command as to the groundwater, it says, we defer completely to the district court. You had that merits argument. That is . . . You came back and said, okay, affirm, basically, and then you'd have that merits argument, but I'm not sure I understand. I think I agree with Judge Hope. What does that have to do with whether this is in the nature of an injunction or not? I think the point that I'm making, Your Honor, is that it shows that LDNR understood that it had to follow . . . Well, limited. Its discretion was severely limited. In other words, one piece of the case was whacked off, but that doesn't mean that this is necessarily an interlocutory . . . Your Honor, remember that this is all that LDNR does under Act 312. Well, I view this as treating a state agency as if they're a federal agency, and under the APA, we have rules and guidelines for the relationship between the federal courts and the agencies, and we don't normally tell . . . we don't even tell a federal agency, go back and apply the law . . . well, we can, but that's because APA says we can, but this is the federal court telling the state agency, here's what you have to do, and I don't see . . . it's not an agency review process. It's essentially an order.  I would point out, shall means shall. It is an imperative command, and I think it's also important that the federal court is directing the state agency that is comprised of scientists, four scientists, hearing scientific evidence that are charged under state law with the duty of protecting the health, safety, and welfare of the state's citizens, and all of that has been preempted by the district court's But what . . . I mean, if . . . suppose this had just gone without dispute, and Chevron had, you know, admitted whatever, and the LDNR came back with a feasible plan, how would that affect litigation going forward? That's what . . . I don't quite understand the interplay between the LDNR and the litigation process. So, that's a critical . . . Presumption. What does that mean? So, that is a critical part of what's happened here, because the plan that LDNR has submitted to the court is . . . it's now imminent that the court will adopt that plan. That's the next step. Then that plan must be implemented immediately. This is because under Section C-2 of the Act, it's its own final judgment, and the implementation of the plan goes forward immediately. And that's why this is the only time for an effective challenge, because . . . That's what I don't . . . that's one thing, and maybe I'm totally misunderstanding. How does this . . . how do we . . . how does this work that all of a sudden a district court is ruling and reviewing on appeal, essentially, a state agency's ruling? Why isn't that in some sort of state court process? Well, there's federal subject matter jurisdictions over in federal court, and the Act does . . . it is substantive in many ways. In some ways, it's procedural, but it's substantive, and you can see this in the Louisiana Supreme Court's opinions. M.J. Farms . . . Is there a review process of the agency's order in this case? The district court does have the right to review the agency's determination, but it does so under a rebuttable presumption that the scientists at the agency are correct. In this case, because the district court has preempted the agency's ruling, we can't determine whether the district court has properly applied that rebuttable presumption. We can't compare what the agency would have done with what the . . . Once the district court enters a final judgment, you can say . . . you can make all these arguments that . . . Yeah, but the final . . . that's why I asked about the ongoing course of litigation, because if there is such a plan, and it were uncontested, then it would be implemented, and then it would shield Chevron from further damage. I mean, damage judgment, is that the whole point, or create a presumption? It would be the only remedy as to the land. But there could be other damages, right? There could be other, what the Act calls private damages, such as any stigma attached to the damaged land. Well, and then I've been carrying that. In this case, if this plan is not the only remedy sought, is that correct or not? That is correct, Your Honor. So, if you implement this plan, that aspect of the case becomes moot, but you're still liable on the back end for other kinds of claims, right? Or at least we have to defend against those claims at trial. Right. And that trial is not set until February 2024. Meanwhile, implementation of the plan goes forward immediately. Right. If it goes forth immediately, it becomes moot. Exactly. This is our only time to effectively challenge, and that's why I would just quickly note that the collateral order doctrine is also satisfied. There are three requirements. One of them is that this is the only time, you know, this is separate from the merits of the case. That is certainly true here, because as this Court said in Vantage Plan, it's a one-way street. Once the remediation goes forward, it can't be undone. And in fact, the remediation that's being sought here is extensive. This is where they plow up all the ground and sift the soil and all that. Thousands of cubic feet of land, the building of 471 wells to drain the groundwater, and importantly, Chevron's experts have explained that this would actually do damage to the environment, this remediation plan. This is our only chance to challenge it. Once it goes forward, it's done. And so that's why it's critical and why I think it meets this Court's narrow test under both the practical effect of injunction . . . I don't disagree with that piece. My only point was it doesn't really matter whether the district court limited the discretion of the state agency or not. It doesn't really bear on whether that question. That was my only . . . I take your point, Ryder. That's correct. I mean, it would be . . . We would be, I think, properly before the court with appellate jurisdiction whether the district court erred or didn't err on the merits. It did, however, err on the merits. And in the very little time I have left, I would just make this point. I would venture that my friend on the other side, Mr. Marcello, would agree, and I'll ask him to disagree with me if I'm wrong, that if this case had come before the court in 2013 instead of 2023, they would have no argument at all that the district court got this right. Why? Because their entire argument hinges upon a definition that was added in 2014 to the Act, the definition of the word contamination. They want that definition to overrule the fact that the Act says that it can be remediation or evaluation. The fact that the Act says in the article that implements the Act that there's remediation only if necessary. They want that change to completely change the law. That's just too much weight for that small change to bear. It doesn't make sense. It's an unprecedented ruling and with all respect to the district court, it got it wrong. I'll reserve the rest of my time. I'm assuming we get to the issue in terms of finding jurisdiction. Is that an issue that we should certify? No, Your Honor, because this court makes eerie guesses all the time. In this circumstance, it's clearly wrong under the plain words of the Act, and I hope we've shown that in the brief. It's not like there's a disagreement among the state courts. This is, I think, a relatively easy case on the merits. I will admit that it's always hard to establish appellate jurisdiction when you don't have a typical final judgment, but on the merits, I think it's easy to predict how the Louisiana Supreme Court would rule. I'll just say one last thing on that point. The Louisiana Supreme Court has interpreted this Act twice recently in a case that Mr. Marcello and I argued twice. That's the LL&E 2 and LL&E 3 case. And in both of those opinions, the Supreme Court rejected the plaintiff's argument on the grounds that their interpretation of the Act would render words of the Act superfluous. That's exactly what they want to do here. They want to render all the words of the Act, except for this definition of contamination, superfluous. The disjunct of construction, evaluation, or remediation. The remediate, if necessary. The fact that the Act provides that when you enter a limited admission, it can be for actual or potential damage. All of that they would render superfluous. This is an easy decision on the merits, and I'll reserve the rest of my time. Thank you. May it please the Court, Your Honor, Victor Marcello for the plaintiff. This is not a concurrence of order, and I'll explain it, and it's very, very simple. But it's all tied up with the history of this Act, which began in 2006. This is a private cause of action, basically based in tort and mineral lease, allegations of breaches of mineral leases. And Louisiana adopted sort of a hybrid approach in 2006, where they injected the agency into the determination of private damages. What happened as we go along the years is that in 2012, this limited admission procedure was adopted. And in the limited admission procedure, a party could come in and admit for limited purpose. The whole issue before that was that, well, we can't admit liability because we're going to be admitting liability for private law damages, and no one wanted to do that. So the legislature decided to give the oil companies an avenue to admit liability for just regulatory damages, and that's what happened with the limited admission. But what happened after that in 2014 changed the game, because in 2014 they added the definition of contamination, which was not in the prior Act, and they also added a rebuttable presumption. So what the trial court did here, what the district court did here, the district court was basically saying, look, if you want to introduce this plan and tell the jury at trial that you've done your duty to the public and cleaned up the contamination that you caused, you have to follow these certain rules. And guess what? We're going to give you, if you do it the right way, we're going to give you a rebuttable presumption that your plan is the most feasible plan to remediate the contamination. Now, that's what happened in 2014. And two things happened. In both Act 312, which is 30-29, the rebuttable presumption was added and was also added in the procedural article 1563, the same exact language. And in addition to doing that, in that legislative session, in the same Act 400 that year, in 2014, they added the definition of contamination, because contamination was not there before. And so the clear intent of the Act in 2014 was that, look, we're going to give you a lot. We're going to give you an opportunity to get a rebuttable presumption to present to the jury, but you've got to agree to go up and clean the contamination that you caused. Now, the important thing is that when... From your argument, Chevron misunderstood the... misunderstands the law, and that being the case, the judge should have allowed them to withdraw their admission. Well, I think... It would have abused discretion, it seems to me, when Chevron said, wait a minute, we don't read the law the way you do. Judge, let us withdraw that and just go to the jury. Well, I don't know whether Chevron understood it or did not understand it. They have a lot of lawyers that are a lot smarter than I am, and I'm sure if they read it, it was pretty plain, that they could understand how it... If the submission to the LDNR, according to you, is a one-way street, which means that there will be a remediation plan, and I think it is common knowledge that remediation plans are usually quite draconian, then no reasonable company would have submitted themselves to that. So when the judge has issued a ruling in a very novel application, this is a novel ruling, is it not? I don't think it's... It's a novel ruling in the sense that the issues never come up. Correct. And so the court had to make an eerie guess, obviously, and what the court did was simply read the definition of environmental damage and read the definition of feasible plan. I mean, that reading, if it's accurate, and I'm not saying, but if it's accurate, that undercuts a major goal of the original statute, it seems to me. It just means that nobody's... No other defendant is ever going to make an admission and go to the LDNR. Now, maybe plaintiff's lawyers like that, maybe they don't. I don't know. Actually, the practice was that after the admission... I don't know if there was actually one admission that I could even think of. I know not in my firm there wasn't. Prior... After the 2012 amendments, where there was a limited admission. It didn't happen until 2014. And the definition... I don't know how you could miss it. It says environmental damage shall mean any actual potential impact, damage or injury to environmental media caused by contamination, and the contamination says... It's very clearly defined that it has to be unsuitable for intended use, each constituent. They admitted it. And I think what the judge found was you could read as well as I can, and you made the admission, and you were... And what has happened is you're trying to game the system. They wanted to go over... They wanted to admit that they were going to clean up, and then when they got to DNR, they basically said, we don't have to do anything. And they were gaming the system. And this is just, you know... I think the judge saw it as what was happening, that Chevron was gaming the system. Well, I don't see how you can game the system when you turn it over to a group of experts and they get to do what they want to do. Well, that's not really what happens under this law, especially because what... But all that's on the merits, and I didn't mean to distract you if I did, because it still seems to me that by issuing an order that they shall find that this is contamination and shall find a remediation plan, then that's telling them what to do, and that seems to me functionally like an injunction. Well... And it's also about to... It'll become moot, right? It's not moot, and that's what Mr Stern did not point out. In this law, Act 312, 3029, they not only have a chance to convince the district court, but they get a de novo review in the Court of Appeal in Louisiana, and I would assume they would get a de novo review here. The statute actually says... We'll have an interlocutory appeal in two, three... In a month or two. Now, believe me, I've thrown up my hands many times over this Act, but I'm just... This is what the law says. It's not this limited admission that they've made and the consequences. They not only have a shot to convince the judge he's wrong, the district court, but also they get a de novo review in the Court of Appeal. You're saying the Louisiana Court of Appeals, right? Louisiana Court of Appeals. That's what I was asking about before. I don't know what happens here because I haven't thought about that. The Louisiana Court of Appeals is going to say, well, I think the federal district court misread the statute. I mean, how does that work? They have a de novo review of the law and facts. Well, after a district court has already said the Act means this, they're going to say, no, it doesn't? Yes. And send it back to the commission? They can send it back for another determination. And then they can go back to the district court and say, well, they didn't do what I did, said they should. I mean, I don't understand how this works. I'm not going to try to defend this Act, the sanity of it all, because it's very hard to defend the sanity of it. It seems to me you'll get a ruling. It seems to me that if the district court had not done what it did in constricting what the state agency could do, then they could be arguing in the state Court of Appeals what this all means, and the state law should be determined by the state courts, and then it would go back to the district court. That's the way it's supposed to work. It doesn't seem to me the district court is supposed to be telling the state agency what it's supposed to do, how it's supposed to interpret it. This is not the typical state agency. This is not the typical court-agency relationship, because what happened in this Act was that it brought in . . . The purpose of the Act was to bring in the DNR to opine on what they thought the . . . what the DNR thought a reasonable remediation plan would be. And that seems to me that's been truncated by what the district court did here. It's cut off a big chunk of what the agency might say is reasonable. No, well, the district court was basically saying, look, if you want to do that, you've got to follow the new rules that you have to have contamination. If you want the rebuttable presumption, which is huge, the practical side of this is what happens as you go to a . . . But it's telling the agency you must order remediation, and the agency might decide it's not appropriate, even if there's this contamination. And it's . . . I think it's pretty much what the agency did, except in a couple of instances they ruled in Chevron's favor on most points. If you look at the plan itself, it's rather complicated. But it's telling the . . . What happened in reality is that the court made its ruling, and then the agencies went along and just let all the evidence in. And if you look at Article 1563, it says that what goes . . . If you want to . . . It comes into evidence, number one, okay? And what I've not mentioned is that in Article 1563, in order for the plan to be published to the jury, it has to satisfy a code of evidence, Article 702 . . . Can't it all be decided in the state court through the appellate process? It can be, and it can't . . . But we're in federal court now. We're not going back to state court, as far as I know. Well, I thought you just got through saying that the agency plan gets a review in the Louisiana State Court of Appeals. Yes. They could get . . . I'm not sure I'm understanding what the issue is that you're presenting. But basically, it becomes a question for the judge as to whether he's going to allow this evidence to be published to the jury in their hard and fast rules, as to what the evidence is. Which judge are you talking about, Judge Cain or the Louisiana Court of Appeals? No, Judge Cain. All right, let me just go back. Judge Cain has sent this to the Louisiana agency. Does the Louisiana agency . . . Can that be appealed to the Louisiana Court of Appeals before it goes back to federal . . . Excuse me. Can it go to . . . Can the LDNR plan go to the Court of Appeals in Louisiana, according to that statute, and then come back to federal district court? No. But a while ago, you didn't seem to be clear on that. No. Well, I think I misunderstood the discussion. But once we're in federal court, I'm not going to . . . We're not going to the Louisiana Court of Appeals. But Judge Cain now has de novo. You're claiming that although the law says the Louisiana Intermediate Appellate Court has the duty de novo to construe that LDNR plan, but now the federal court has the duty de novo to construe that LDNR plan. It's not . . . Has Judge Cain indicated anything about that? No. This is . . . It's a little bit different rule. The rule is that . . . Why are you talking about the Louisiana Court of Appeals a while ago? Just explain. I don't . . . What I'm explaining is that Mr. Stern argued that this was the final word and they were going to be irreparably injured. And what I was trying to explain is that they can even come to this court of appeal and get and seek de novo review based upon the Louisiana procedural rules. I thought you said the Louisiana Court of Appeals. No. Well, if I did, I misspoke. I misspoke. Can we go . . . I think we're all confused now. You were trying to make the point that opposing counsel is wrong about this whole theory that this is moot, it's too late, this is our only shot. That's correct. And I thought your point was, no, no, no, no. You can file before the Louisiana judge. You can then even get de novo review by a Louisiana court of appeal. Right. Do you stand by that statement? Yes. Because I think we all heard it. Right. Okay. But you can't do it in this case. Why not? Okay. So hypothetically, hypothetically that's available. Who's on . . . Yeah, who is on first? If I could do that, I would do it. How about if we certify this whole thing to the Louisiana Supreme Court right now? Well, I go there pretty often. I'm sure they won't mind me coming back. Can I switch gears a bit? But I understand where . . . I understand the problem now. I've just never conceived in my mind, Your Honor, that once we were in federal court, we can somehow find our way to a Louisiana appellate court. I just don't see that happening. You're just saying in another type of situation where we're not in federal court. Got it. All right. I want to go back to the appellate jurisdiction point. I just want to ask a clarifying question really to both sides. So I'm going to ask you first. Imagine two worlds. World one is Chevron never withdraws the admission. They're good with the admission. I presume then proceedings then go to the LDNR under the Act. Right? Okay. That's world one. World two is this world where they are trying to resist and the district court says, well, I'm not letting you withdraw. So it goes to the LDNR. Are these two worlds different in terms of what LDNR is about to do? It obviously, I think, is because the LDNR, when they wrote their plan, they referenced the judge's ruling as apparently restricting what they otherwise might have wanted to do. So yes. So the ruling below is telling LDNR to do things that, I'm sorry, it's restricting LDNR in a way that is different if we had not had this fight in federal court at all in terms of withdrawing the admission. That's correct. But keep in mind that in . . . Does that make that an injunction? What's that? Do those instructions turn this into something that's completely an injunction? No, I just think . . . Why not? Why not is this. Because the ultimate decision on what the feasible plan is, under the law, under Act . . . These are under 30 colon 29, is that it goes back to the district judge. The district judge has the final say. And all the plaintiff has to do if he doesn't like the plan is he has to prove by a preponderance of the evidence that the plan is not the most feasible plan. Why don't we stop you there? Okay. When does this court get to review the district court's review of the agency action? On an appeal. When? When does that appeal occur? After the trial on the . . . Well, with great . . . And so when does remediation occur? Well, it could . . . When does remediation . . . When will that occur? Before trial, after trial, what? I would think . . . That's a problem that's . . . It is a problem and I need the answer. Well, I wish I could give you one, but I'm not sure I know what the answer is. You've got to tell us because that is going to determine whether we have jurisdiction or not, perhaps. Well . . . What's your answer? Well, my answer is this. If it's a final plan, they can . . . What does that mean? If it's a final . . . If it's a final feasible plan, then that is published to the jury. The case is, it's all reduced to one judgment at the end, judgment on the private claims and judgment on the public claims. That is the feasible plan claims. And it all goes up to the court of appeal at one time. But mechanically, LDNR has proposed its plan and as I understand what you're saying, the judge has the right to say that that qualifies or not for the presumption. Right. And if Chevron disagrees with that, then Chevron has to go to the jury and bear a burden to show that it's not the best feasible. But in the meantime, what's the status of the remediation order? The status of the remediation is that the DNR has the option and it's talked about in the statute of issuing compliance orders. It doesn't have to. It's supposed to issue compliance orders, but that's under their regulatory . . . But . . . . . . normal regulatory function. But what about the provision that he says requires the plan to be implemented immediately? It's implemented immediately. I would presume that since we're in federal court, that the situation would be that they would have to seek an interlocutory appeal.  All right. Bingo. Okay. So, you know . . . So we'll be here, some panel will be here two months from now. Well, hopefully not, but . . . What happens to . . . It's interlocutory. It's just a question of . . . Right. When we let it go to the agency, even if we . . . And then they do what they're saying, and then we come back and after all that's been done, decide if the district court properly sent it with the right instructions to the agency. Right. I mean . . . And what difference under interlocutory appellate jurisdiction makes it right then for interlocutory appeal when it's not now? It's . . . I'm not questioning that there's an argument that it could be . . . This could have been an interlocutory appeal. That made it . . . It depends on . . . The judge . . . The district judge obviously had to certify it as such and he didn't do it. I don't know if it was asked for. I don't think it was. So we're here basically on the argument that it's either . . . No, you're not answering my question. Okay. You're saying that Chevron would have a right to interlocutory appeal if it . . . Now that we have a decision from the agency and the district court accepts that and Chevron says it's infected with error from the get-go, will they have an appeal now that you have the agency ruling? Can they appeal all of that? To us? I'm saying that arguably they could. Not arguably. Do they or do they not? I haven't looked at this issue in a while, but I'm thinking . . . Well, they get a review at some point by the court of appeals and it's got to be meaningful. So when is that? It can be meaningful then and it can be meaningful after it's all over, after the trial . . . After the remediation is already done. No, it's . . . They don't . . . The argument is that we've got to . . . The whole argument for the limited admission to start off with was that we get to go out and do it. We get to go out and do the remediation. Unless the judge forces them to do it or unless the agency issues a compliance order, nothing happens. I mean, nothing's happened for 50 years out there, so what's the rush? You know, I mean . . . Why send it to the agency to get a plan if it doesn't mean . . . This is all . . . This is . . . You're not really helping us figure out when they have the right to appeal. Because I don't think there's really a clear answer to that question. Well, okay. You . . . Okay. I'm just . . . I'm sorry. I don't have the answer to that question. You're going to say . . . I'm going to say that . . . I'm going to say this, that what'll generally happen is that it'll just work its way through trial and then everything will go up at one time, which is always what happens. Assuming we have appellate jurisdiction, what's your position on certification of the issues to the Louisiana Supreme Court? Well, I'm okay with it. I mean, I think I win there, but I think it . . . Because of the complexities, of course, I know the court won't be celebrating that they're getting another Act 12 case because they get them fairly often, but . . . Yeah, I mean, I think this is a . . . Well, they can always turn it down. Yeah, they can always turn it down, but bottom line is that this is an unanswered question and the whole issue of the definition of contamination is new. Because what's happened on these cases, and just from a practical standpoint, is that we're just working through a backlog and this amendment happened in 2016 and the cases that are affected by that amendment are just kind of coming up. All these cases take five, ten years to wind through the courts. So I think it . . . I would have no objection to a certification to the Louisiana Supreme Court. It may be the most logical thing to do at this point. You're saying it would take five or six years to get to the Louisiana Supreme Court and back to us? No, no, I'm saying it takes . . . I'd say the typical Act 312 case takes five, sometimes ten, and the one that Mr. Stern cited is now in its 21st year. Okay, so . . . I'm serious, okay. I was pretty young when it started. No, I had a law clerk a few years ago who, in a summer job, was working on the Exxon Valdez case 25 years. You know, she had barely been born when the Exxon Valdez . . . Okay, yeah, so . . . And so, yeah, I mean, that's the one up Mr. Stern was talking about, the East White Lake, Louisiana land case that's been going on for 21 years. And if you have any other questions . . . I'm sorry I've confused the panel more than I've . . . I'm scared to ask any. And I'm scared to answer any. Thank you, Ron. Can you answer the appellate jurisdiction question I asked earlier? And I'll be fast. How is the district court's . . . I'm sorry. How is LDNR's discretion different now under the order than had Chevron never withdrawn the admission or never tried to withdraw the admission and it would go to LDNR anyway? I don't think it's . . . I'm assuming you think it is different or it's not different. I don't think it's different based upon whether the . . . So what LDNR . . . Let me ask them because I'm going to follow up on what you just said. What LDNR . . . Let's say disappeal doesn't happen, right? The district court order is valid for whatever reason. It goes to LDNR and they're going to do their process under the district court order. You're saying it's the same process had Chevron never withdrawn . . . tried to withdraw its admission. Either way, it's going to LDNR to do what it's going to do? I think the clearest way for me to answer is that had we been allowed to withdraw our admission . . . That's not my question, but go ahead. Okay. Had we been allowed to withdraw our limited admission, the district court's sole rationale for compelling remediation would have ceased to exist and then LDNR would have had full discretion to recommend whatever it felt appropriate based upon the scientific evidence. But given . . . Mr. Marcello might have appealed at that point, tried an interlocutory appeal at that point, right? And I want to address the appeal question that was the subject of so many questions. Can we get back? I'm not sure we ever answered my question. Okay. Or maybe you did. Maybe you're saying the two worlds are the admission sticks, right? Okay. In World I, Chevron has never tried to withdraw. So it's just going to LDNR, right? In this world, you did try to withdraw. Judge Kain rejected that and then sent it to LDNR. Is LDNR doing the same thing under either world? So the two worlds are Chevron never attempted . . . Yeah. So it's going to LDNR, right? And then . . . Or this world where you did try, but it was rejected. I think in those two worlds, LDNR is doing the same thing. We have the . . . Either way, LDNR is required to follow Act 3, whatever the number is, but it's doing the same thing whether you guys have fought the admission or kept the admission. And more importantly to me, either way, LDNR is required to follow the district court's command, which I think has the effect of an injunction, which is . . . Right. But I think you're saying either way, LDNR is . . .  Of course LDNR is going to . . . I think what you're telling is that nothing has changed in terms of what all the district court has told them is that the admission sticks, so do what you were going to do anyway. It's not do what you were going to do anyway. It's do what I told you to do, which is . . . But how is that different? That's basically my question between the two worlds. Well, what's different . . . How is LDNR's discretion any different? I think that what's different is that the district court has commanded LDNR to order a remediation. LDNR might have . . . But wouldn't that have been true had you never tried to withdraw the admission in the first place? If we had entered the limited admission and never tried . . . Right, and never tried to withdraw it. That would be true. Okay. Thank you. I want to address the appeal that there were so many questions about. It is correct that Act 312 does provide for an appeal of the limited . . . of the feasible plan, it's called. But that is a state procedural part of the Act. I would like to think, frankly, that it applies in federal court, but I don't think that's a given, right? Because we know that a federal court, when there's a collision between federal procedure and state procedure, a federal court applies federal procedure. That's the Shady Grove decision from the U.S. Supreme Court. And it's not at all clear, I don't think, that that appeal stands. I think what's more important, though, is that there was some suggestion that there was no need for an appeal, you know, that we would have our . . . that we're gaming the system, I think, was the argument. And I would suggest that that is incorrect, that, in fact, what is happening here is the system. Making the limited admission is exactly what the legislature contemplated with the entire limited admission procedure. It's a way that the legislature has provided for LDNR's review and its recommendations to be fast-tracked. Because otherwise, it awaits the ultimate trial. This is the only way that this is fast-tracked, that this gets ahead of the trial. And because the remediation goes forward immediately, this is what the legislature wanted. And while I will agree that the wordsmithing in Act 312 leaves something to be desired, it's not the most clearly written act, I think that it's actually brilliant in its design in that the legislature's main concern is protecting the environment and the health, safety, and welfare of the state's citizens. And so what it provides is a way for a defendant to make a limited admission for the property either to be evaluated or remediated whichever LDNR finds is appropriate. And for that all to happen immediately, before the trial, that's not set until 2024. And that's not gaming the system, that is the system. And it's a laudable goal of the legislature. And unfortunately, what's happened here is that because the district court has preempted the LDNR scientists... This is sort of the environmental equivalent of the statutes that require expert medical testimony to be furnished by a plaintiff within six or eight whatever limited period after filing suit. It gives everybody a heads-up on the scope of what's going on. Exactly. And the vast majority, and of course, this court has enforced the Louisiana Medical Malpractice Act. Right. And that's because where state procedure doesn't collide with federal procedure, a federal court applies it. And that's true for the vast majority of this act. The act complements, it doesn't collide with federal procedure. And Judge Jones, you asked the question, why would any other defendant after this court's ruling ever make a limited admission? And I agree with you. What this ruling does, and remember, this court's, the district court's ruling, it's not based upon the facts of this particular case. It's based upon a flawed statutory construction. And if it's left in place, what the district court admitted was an unprecedented approach. If it's left in place, then no defendant ever again will make a limited admission. And this procedure that the legislature wanted to fast-track that entire process for LDNR to get involved now, not after the trial. Back to the interlocutory appeal question. It seems to me, and this is hypothetical, if we give you an appeal now, we're appealing the district court's remand order, or sideways order, to the agency, saying, well, you truncated the agency's discretion. And if we agree with you, then it goes to the agency. Then the agency comes back, the district court reviews that agency decision, and the district court changes it or does... Do you appeal at that point? Do you get another appeal? So two answers. The first point I would make, and I'm gonna answer your question directly, but if this court has corrected the district court's flawed statutory construction, I don't know that another appeal will even be necessary, right? Because at that point, I would hope that the district court will defer to the LDNR scientists. Remember, the district court is commanded to apply a rebuttable presumption. But to answer your specific question, the Act does provide for an appeal, then. That's purely a procedure. It's unsettled whether that applies in federal court. I don't know the answer to that. I think it's conceivable that that's one of the rare circumstances where a federal court would say, we have our own procedure on when appeals are allowed, and we're not... That particular, that very limited part of the Act is not going to apply in federal court. I don't know, but... Okay, but you're talking about whether you carve out the Louisiana State Appeals Court. My question is, the district court... The agency comes back with a ruling to the district court, and the district court does something with it that you don't like. They say, well, the district court construed it to mean something, and you say, no, that's not what the agency said. Do you get to appeal the district court's ruling about whatever the agency said at that point, too? That's what I'm trying to answer, Judge Richmond. If the procedural right to appeal is found to exist in federal court, then yes, there would be a right to appeal, then. I don't know the answer to whether that procedural right to appeal... And the other point of it would be... I mean, this does figure in with whatever they order, because the plaintiff might conceivably be dissatisfied with what the LDNR has said at that point. I'm not sure what... I'm not sure that we... that it's... that it's reasonable for us to be forecasting the future when we're talking about the appealability of this particular order. You want to talk about the imminence of the remedial plan? He seemed to be saying that the remedial, even though the statute says immediately, maybe it wouldn't be immediate and it would depend on these other proceedings in court. I think his argument was... my opponent's argument was that it wouldn't be immediate because there's an appeal. We've talked about whether there's an appeal in federal court, open question. But even assuming that there is, my understanding is that the remediation goes forward. Now, a party could move for a stay based upon dependency of an appeal, if an appeal lies. But absent that stay being granted, my understanding under Act 312 is that it's a final judgment. Implementation goes forward. Of course, the district court could order a stay or not, and that would be probably appealable. Correct, Your Honor. It would be a quasi-injunction at that point. But how do you get to argue to the jury that you've done enough about the remediation if you haven't done the remediation by the time it goes to trial? Well, what the Act says is that the jury is instructed that there is a plan, if that has happened, and that there is a rebuttable presumption under the plan. Whether you've done it or not. But you can't still be challenging the plan and tell the jury . . . I'm just trying to figure out . . . Well, I think it . . . I mean, of course, that depends from case to case, depending on, you know, temporarily what's happened and what's not happened. Sometimes all of this happens after . . . My point is, under his . . . the way he says it works, you're kind of stuck with the plan because you can't appeal it when it . . . When the district court sends it to the district court, the agency already gets back to the district court, you don't get to appeal until after the trial is over. You don't ever get to say, I don't agree with the plan, because if you don't agree with the plan, you don't get the presumption, you don't get to argue it to the jury. And this is why the legislature  which I do think is important, and I don't mean to be heard as saying that an appeal shouldn't be allowed. I'm just saying that that's a procedural . . . Taking an appeal is procedural, and so it's not crystal clear whether it would be allowed. I do think it's important . . . That's an awkward thing for a Louisiana Court of Appeals to say, well, we disagree with the district court's construction of the act in the first place. It should not have limited . . . It should not have ordered remediation, so we're going to send it back to the agency and say your hands aren't tied. I mean, it seems to me that's kind of a . . . Well, I guess I would answer it this way, Your Honor. I think in this particular case, the path forward is clear, because the district court clearly . . . I think there's appellate jurisdiction, number one, and the district court's construction of the statute is clearly wrong. Once that's corrected, and the district court is ordered to vacate its . . . its order is vacated, I think we're . . . I understand. I'm just trying . . . You're not trying . . . Well, I am trying to answer, because I think what will then happen is in this case, it'll be . . . LDNR should be given the opportunity to enter its plan . . . We understand your position. I've got your position. I was asking you the hypothetical. Thank you. Okay. Thank you, Your Honor. The court is adjourned. Thank you.